IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE FUND,<br>257 Park Ave. S.<br>New York, NY 10010,<br><br>       Plaintiff,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY,<br>1200 Pennsylvania Ave., NW,<br>Washington, DC 20460,<br><br>       Defendant. | Civil Action No.<br><br><br><br><br>**COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF** |

In 2009, the Environmental Protection Agency ("EPA") issued the "Endangerment Finding," a determination that greenhouse gases ("GHGs") in the atmosphere threaten the public health and welfare of current and future generations, and that emissions from motor vehicles contribute to the GHG pollution that threatens public health and welfare. The Endangerment Finding is grounded in extensive scientific evidence and is foundational to efforts to reduce GHG pollution. In a January 20, 2025 Executive Order, President Trump directed the EPA Administrator to assess the "legality and continuing applicability" of the Finding. Reports on February 26, 2025 suggested that Administrator Zeldin has recommended to the White House to reverse the Finding. Any action to destabilize the Finding and constrain EPA's ability to reduce climate pollution would have significant, harmful consequences for communities across the country, who are already experiencing the devastating effects of climate change.

To bring greater transparency regarding the new administration's directive to assess the Endangerment Finding, Plaintiff Environmental Defense Fund ("EDF") submitted a Freedom of Information Act ("FOIA") request to EPA seeking correspondence and records of EPA transition

1

team members and political appointees relating to the Endangerment Finding. EPA failed to produce any records or make a determination on this request by the statutory deadline, violating EDF's rights under FOIA and depriving the public of vital records of clear and immediate public interest.

**INTRODUCTION**

1.      EDF files this action to enforce the statutory obligations of EPA under FOIA, 5 U.S.C. § 552.

2.      On January 20, 2025, President Trump signed an Executive Order titled "Unleashing American Energy" (the "Executive Order") in which he directed the EPA Administrator, "in collaboration with the heads of any other relevant agencies," to "submit joint recommendations to the Director of [the Office of Management and Budget ("OMB")] on the legality and continuing applicability" of the Endangerment Finding. *See* Unleashing American Energy, Exec. Order § 6(f) (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/unleashing-american-energy/.

3.      The Endangerment Finding is a determination issued by EPA in 2009 that is comprised of two separate findings under Section 202(a) of the Clean Air Act: first, that six GHGs in the atmosphere, including carbon dioxide and methane, threaten the public health and welfare of current and future generations; and second, that the combined emissions of these GHGs from motor vehicles contribute to the GHG pollution that threatens public health and welfare. *See* Endangerment and Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, 74 Fed. Reg. 66,496 (Dec. 15, 2009); *see also* 42 U.S.C. § 7521(a).

4. The Endangerment Finding is grounded in extensive scientific evidence, and challenges to its validity have been repeatedly rejected in court and by EPA. It underpins EPA's efforts to set standards to reduce harmful climate pollution and supports numerous pollution-reducing programs for the power sector, the oil and gas industry, and the motor vehicle sector. These programs have delivered critical benefits to Americans across the country.

5. Any effort to undermine or destabilize the Endangerment Finding, as the Executive Order suggests the new administration plans to do, would put these programs—and the important pollution reduction benefits they deliver—at risk and harm Americans in communities across the country.

6. On January 29, 2025, EDF submitted a FOIA request ("FOIA Request") to EPA seeking all correspondence and records of all members of the EPA transition team and political appointees relating to the Endangerment Finding. *See* Ex. A at 1-2 (Letter from Erin Murphy, EDF, to National Freedom of Information Officer, EPA). That same day, EDF received a form letter from EPA acknowledging receipt of the FOIA Request. Ex. B (Email from J. Chu, EPA, to Erin Murphy, EDF).

7. Under FOIA, EPA had 20 working days—until February 27, 2025—to make a determination on the FOIA Request. *See* 5 U.S.C. § 552(a)(6)(A)(i); 40 C.F.R. § 2.104(a)(1).

8. On February 26, 2025, EDF received an email from EPA stating that the FOIA Request was being placed on the "complex" processing track with an estimated completion date of May 30, 2025, months after the statutory deadline for a determination. Ex. C (Email from Jonathan Newton, EPA, to Erin Murphy, EDF). This email was not the determination that FOIA requires.

9. To date, EDF has not received EPA's determination on the FOIA Request or any requested records, in violation of the statutory deadlines and other requirements of FOIA.

10. The public, including EDF and its members, has a strong interest in any records related to the current administration's recommendations and actions to reverse or undermine EPA's Endangerment Finding. Vital EPA pollution reduction programs rely on the Endangerment Finding, which are providing enormous benefits in communities across the country.

11. Knowledge of the extent and nature of communications with EPA transition team members, political appointees, and outside stakeholders is critical for EDF, its members, and the public to understand EPA's decisions relating to any reassessment of the Endangerment Finding. EPA's current actions have been completely lacking in transparency, in contrast with the extensive public process that EPA undertook to develop and adopt the Endangerment Finding. EDF submitted its FOIA Request to bring transparency to these records.

12. EDF requested the information in order to disseminate it to EDF's members, supporters, and the general public. EDF has communicated on these issues in the past, including recently. Peter Zalzal, *Danger ahead: the Trump administration's attack on EPA's finding that climate pollution harms public health*, EDF (Feb. 14, 2025), https://blogs.edf.org/climate411/2025/02/14/danger-ahead-the-trump-administrations-attack-on-epas-finding-that-climate-pollution-harms-public-health/. EDF also plans to use its expertise to analyze the records and help the public understand their significance.

13. EPA is unlawfully withholding and unreasonably delaying the release of records requested by EDF and to which EDF is lawfully entitled under FOIA, despite the records' clear salience to current agency actions with grave implications for public health and welfare.

14. EDF seeks declaratory and injunctive relief declaring that EPA has violated FOIA and an order compelling the agency to promptly release all requested records.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this action pursuant to FOIA, which vests jurisdiction in the U.S. District Court for the District of Columbia. 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under FOIA, a federal statute.

16. Injunctive relief is appropriate under FOIA. 5 U.S.C. § 552(a)(4)(B). Declaratory relief is appropriate under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

17. Venue is proper in this judicial district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

18. Plaintiff EDF is a 501(c)(3) non-profit environmental organization dedicated to finding practical solutions to critical environmental problems through the use of law, policy, science, and economics. EDF has offices throughout the United States, including in the District of Columbia.

19. EDF engages in extensive, daily efforts to inform the public about matters affecting environmental and energy policy, as well as about climate change science and the human health impacts of pollution. EDF has multiple channels for distributing information to the public, including through direct communication with its more than three million members and supporters, press releases, blog posts, and active engagement on social media. EDF is frequently called upon to share its expertise on important environmental issues in the popular media and in other public forums.

20. EDF has long advocated for measures to protect communities from the harmful effects of climate change, including EPA pollution reduction programs that the Endangerment Finding supports. For example, EDF has advocated for and supported standards to reduce climate pollution from large sources such as power plants, cars and trucks, and oil and gas operations. These standards have been successful in reducing harmful climate pollution.

21. EDF is injured by EPA's failure to timely produce public records that were properly requested and to which EDF is entitled under FOIA. *See Zivotofsky v. Sec'y of State*, 444 F.3d 614, 617-18 (D.C. Cir. 2006) ("The requester is injured-in-fact for standing purposes because he does not get what the statute entitles him to receive.").

22. Defendant EPA is an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and is subject to FOIA. EPA has possession and control of the requested records and is responsible for fulfilling EDF's FOIA Request.

## LEGAL BACKGROUND

23. FOIA requires a federal agency to make public records "promptly available"—subject to enumerated exemptions—to any person who makes a request that reasonably describes the records sought and complies with the agency's rules for making the request. 5 U.S.C. § 552(a)(3)(A).

24. FOIA requires the agency to issue a determination on a FOIA request within 20 working days from the date of receipt. *Id*. § 552(a)(6)(A)(i); *see also* 40 C.F.R. § 2.104(a)(1).

25. The agency's determination on a FOIA request shall contain (1) the agency's determination of whether to comply with the request and provide responsive records, (2) the reasons for the agency's determination, and (3) notice of the right of the requester to appeal an adverse determination to the head of the agency. 5 U.S.C. § 552(a)(6)(A)(i).

26. Mere notice of the agency's receipt of the request does not suffice for a "determination," nor is it enough that "within the relevant time period, the agency simply decide to later decide." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 186 (D.C. Cir. 2013). Instead, "the agency must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Id.*

27. FOIA allows the agency to extend the 20-working-day deadline by up to 10 additional working days for "unusual circumstances" by providing written notice to the requester that describes the "unusual circumstances" and provides the date on which the determination is expected to be issued. 5 U.S.C. § 552(a)(6)(B)(i); *see also* 40 C.F.R. § 2.104(a)(3), (f).

28. Such notice must provide the requester "an opportunity to limit the scope of the request so that it may be processed within [FOIA's 20-working-day] time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." 5 U.S.C. § 552(a)(6)(B)(ii).

29. EPA regulations further provide that "[i]f the 20 working-day period is extended, EPA will give the requester an opportunity to limit the scope of the request, modify the request, or agree to an alternative time-period for processing." 40 C.F.R. § 2.104(f).

30. FOIA also allows agencies to use "multitrack processing" to distinguish requests based on the amount of work or time they will require to process. 5 U.S.C. § 552(a)(6)(D).

31. EPA uses "three or more processing tracks" to distinguish between simple and complex requests. 40 C.F.R. § 2.104(d). EPA "may place [a] request in a slower track while providing the requester with the opportunity to limit the scope of the request to qualify for faster processing." *Id.*

7

32. FOIA's "multitrack processing" provision does not authorize agencies to extend the statutory deadline for issuing a determination on a request. 5 U.S.C. § 552(a)(6)(D). Thus, placing a FOIA request on a "complex" processing track does not change the agency's fundamental obligation to comply with that deadline.

33. If the agency fails to comply with FOIA's statutory deadline for issuing a determination on a request, the requester is deemed to have exhausted its administrative remedies and may file suit against the agency. *Id.* § 552(a)(6)(C)(i); *see also* 40 C.F.R. § 2.104(b).

34. The agency bears the burden to prove the legality of its actions under FOIA. 5 U.S.C. § 552(a)(4)(B).

35. FOIA grants jurisdiction to the court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id*.

36. Under FOIA, this Court may assess attorney fees and costs against the United States if EDF substantially prevails in this action. *Id*. § 552(a)(4)(E).

## FACTUAL BACKGROUND

**A. Endangerment Finding**

37. In 2009, EPA made two vital findings: first, that six GHGs in the atmosphere, including carbon dioxide and methane, threaten the public health and welfare of current and future generations; and second, that the combined emissions of these GHGs from motor vehicles contribute to the GHG pollution that threatens public health and welfare. *See* Endangerment and Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, 74 Fed. Reg. 66,496 (Dec. 15, 2009), https://www.epa.gov/ sites/default/files/2021-

05/documents/federal_register-epa-hq-oar-2009-0171-dec.15-09.pdf. Together, these findings are referred to as the "Endangerment Finding."

38. The Endangerment Finding requires EPA to adopt standards to reduce GHG pollution from motor vehicles, a significant contributor to overall GHG emissions in the United States, and it likewise underpins EPA's standards that reduce harmful climate pollution from other sectors, including standards addressing emissions from the power sector and the oil and gas sector. EPA's GHG emissions reduction standards have been successful in reducing pollution and delivering benefits to Americans across the country.

39. EPA adopted the Endangerment Finding after significant public process, including multiple opportunities for the public to give input and EPA's evaluation of more than 380,000 public comments. The Endangerment Finding is based on extensive scientific evidence that climate pollution poses a grave threat to human health and welfare. That scientific evidence has only become stronger in the more than 15 years since the Endangerment Finding was adopted, with experts confirming that climate change resulting from GHG emissions is causing extensive, and increasingly severe, harms throughout the country. *See* Letter from P. Zalzal et al., EDF, to Hon. Lee Zeldin, EPA, at 5-9 (Feb. 18, 2025), https://tinyurl.com/EDFLetter021825.

40. Parties have filed legal challenges to the Endangerment Finding in the past, but—given the extensive evidence supporting the Endangerment Finding—EPA and the courts have uniformly rejected those efforts. *See, e.g.*, *Coal. for Responsible Regulation v. EPA*, 684 F.3d 102, 116126 (D.C. Cir. 2012) (rejecting challenges to the Endangerment Finding on multiple grounds), *rev'd in part on other grounds sub nom. Util. Air Reg. Grp. v. EPA*, 573 U.S. 302 (2014); Endangerment and Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act; Final Action on Petitions, 87 Fed. Reg. 25,412 (Apr. 29, 2022);

EPA's Denial of the Petitions to Reconsider the Endangerment and Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, 75 Fed. Reg. 49,556 (Aug. 13, 2010).

41. Despite the long-standing nature of the Endangerment Finding, its extensive scientific support, and its manifest legality, the Executive Order now directs the EPA Administrator to assess "the legality and continuing applicability" of the Endangerment Finding. *See* Exec. Order § 6(f).

42. According to news reports, EPA has completed its assessment and recommended a reversal of the Endangerment Finding, but EPA has not shared that recommendation with the public. Jean Chemnick et al., *EPA moves to ditch finding that greenhouse gases cause harm*, POLITICO (Feb. 26, 2025 3:23 PM), https://www.politico.com/news/2025/02/26/epa-greenhouse-gases-00204866; Matthew Daly, *EPA head urges Trump to reconsider scientific finding that underpins climate action, AP sources say*, AP (Feb. 26, 2025 3:45 PM), https://apnews.com/article/epa-endangerment-finding-zeldin-trump-climate-change-4b34246d5ca798154af08560fd94f7b9.

**B. EDF's FOIA Request to EPA Regarding the Endangerment Finding (Request No. 2025-EPA-03201)**

43. EDF submitted the FOIA Request to EPA on January 29, 2025, seeking all correspondence and records of all members of the EPA transition team and all EPA political appointees, including but not limited to twenty-nine specifically identified individuals, relating to the Endangerment Finding. *See* Ex. A at 1-2. EDF identified eight search terms to facilitate EPA's search. *Id.* at 2.

44. Given EPA's fast-moving efforts to assess and provide recommendations to OMB regarding the Endangerment Finding, the significant impacts to EPA's pollution reduction

programs if the Endangerment Finding were to be altered or rescinded, and EDF's strong interest in understanding and publicly sharing the basis for any efforts to destabilize or undermine the Endangerment Finding, EDF requested expedited processing of the FOIA Request. *Id.* at 3-4; *see also* 5 U.S.C. § 552(a)(6)(E)(i)(I); 40 C.F.R. § 2.104(g).

45. EDF also requested a waiver of fees associated with the FOIA Request. Ex. A at 4-5; *see also* 40 C.F.R. § 2.107(n).

46. On January 29, 2025, EDF received a form letter from EPA acknowledging receipt of the FOIA Request. The letter provided no estimate of when EPA would issue a determination on the FOIA request, merely stating that the FOIA Request "was assigned for processing." Ex. B.

47. The same day, by separate letter, EPA granted EDF's fee waiver request. Ex. D (Letter from Lee Hagy, EPA, to Erin Murphy, EDF).

48. On February 5, 2025, EDF received a letter from EPA denying its request for expedited processing, asserting that EDF's request did not speak to any urgency to inform the public or identify any expectation of an imminent threat to life or safety. Ex. E at 3 (Letter from Tracey Klosterman, EPA, to Erin Murphy, EDF).

49. On February 26, 2025, EDF received an email from EPA stating that the FOIA Request was being placed on the "complex" processing track with an estimated completion date of May 30, 2025—three months after the statutory deadline for EPA to issue a determination on the FOIA Request. Ex. C. EPA informed EDF that an "initial review of [its] request indicates a need to consult with, and collect records from, multiple components of the Agency." *Id.*

50. The February 26 email did not assert that "unusual circumstances" prevented EPA from issuing a timely determination on EDF's request and did not claim to be taking a 10-working-day extension under the statute and regulations. *See id.*

51. The February 26 email did not inform EDF of "the scope of the documents that the agency will produce" or "the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Citizens for Responsibility & Ethics in Wash.*, 711 F.3d at 186; *see* Ex. C.

52. The February 26 email was not EPA's determination on the FOIA Request.

53. Nor did the February 26 email extend EPA's deadline for issuing a determination on the FOIA Request.

54. While the February 26 email provided an estimated completion date of May 30, 2025, EDF did not agree to that date as an alternative time period for EPA to process the FOIA Request.

55. EPA did not provide a determination on the FOIA Request within FOIA's 20-working-day deadline, which lapsed on February 27, 2025. *See* 5 U.S.C. § 552(a)(6)(A)(i); 40 C.F.R. § 2.104(a)(1).

56. EPA also did not provide EDF with written notice that it was extending that deadline. *See* 5 U.S.C. § 552(a)(6)(B)(i); 40 C.F.R. § 2.104(a)(3), (f).

57. To date, EPA has not issued a determination on the FOIA Request or produced any records in response to the FOIA request.

58. EPA has reportedly completed its review of the legality and continuing applicability of the Endangerment Finding, though it has not yet made its recommendations available to the public.

59. The information sought in the FOIA Request will be critical to understanding those recommendations and any subsequent agency action.

60. The agency's failure to respond to the FOIA Request within the required timeframe has prevented EDF, its members, and the general public from being fully informed and able to meaningfully engage on this issue.

## CLAIM FOR RELIEF
## VIOLATION OF THE FREEDOM OF INFORMATION ACT

61. EDF incorporates by reference all preceding paragraphs.

62. Under FOIA, EDF has a statutory right to have EPA process the FOIA Request in a timely manner.

63. Under FOIA, EDF also has a statutory right to obtain all non-exempt records responsive to the FOIA Request.

64. EPA failed to comply with the statutory deadline for issuing a determination on EDF's FOIA Request. *See* 5 U.S.C. § 552(a)(6)(A)(i).

65. EPA failed to make a determination on the FOIA Request from which EDF could exercise its statutory right of appeal. *See id.*

66. EPA failed to timely produce all non-exempt records responsive to the FOIA Request. *See id.* § 552(a)(3)(A).

67. Unless enjoined by this Court, EPA will continue to violate EDF's legal rights to timely receive a complete set of responsive documents sought through its FOIA Request.

68. It is in the public interest for the Court to issue an injunction requiring EPA's immediate compliance with FOIA.

**REQUEST FOR RELIEF**

EDF requests the following relief from the Court:

A. Declare unlawful EPA's failure to provide EDF with a determination on its FOIA Request within FOIA's deadline.

B. Declare unlawful EPA's failure to make the requested records promptly available to EDF.

C. Order EPA to provide EDF with all responsive records immediately, at no charge to EDF, and in unredacted form unless an exemption is applicable and properly asserted.

D. Order EPA to provide a *Vaughn* index of any responsive records or portions of records withheld under the claim of a FOIA exemption. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

E. Award EDF its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E), 28 U.S.C. § 2412, and any other applicable law.

F. Grant any further relief as the Court deems just and proper.

Respectfully submitted on March 3, 2025.

/s/ *Samantha R. Caravello*
SAMANTHA R. CARAVELLO (Bar ID CO0080)
NATHANIEL H. HUNT (Bar ID CO0107)
Kaplan Kirsch LLP
1675 Broadway, Suite 2300
Denver, CO  80202
Telephone: (303) 825-7000
E-mail: scaravello@kaplankirsch.com
          nhunt@kaplankirsch.com

ERIN MURPHY (Bar ID D00532)
Environmental Defense Fund
555 12th St. NW, Suite 400
Washington, D.C. 20004
Telephone: (202) 572-3525
E-mail: emurphy@edf.org

*Counsel for Environmental Defense Fund*